# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
Assigned on Briefs September 5, 2012

## LADERIUS STEPHENS v. STATE OF TENNESSEE

**Appeal from the Criminal Court of Shelby County**
**No. 09-03098      W. Otis Higgs, Jr., Judge**

---

**No. W2011-02564-CCA-R3-PC  - Filed November 13, 2012**

---

Laderius Stephens ("the Petitioner") filed a petition for post-conviction relief from his convictions for especially aggravated robbery and attempted second degree murder. Pursuant to his plea agreement, the Petitioner received an effective sentence of fifteen years to be served in the Tennessee Department of Correction. In his petition for relief, he argued that he was denied effective assistance of counsel in conjunction with his guilty plea and that his plea was constitutionally infirm. After an evidentiary hearing, the post-conviction court denied relief. The Petitioner now appeals, raising the same two issues. As his bases for ineffective assistance of counsel, the Petitioner contends that his counsel at trial: (1) failed to file the appropriate discovery motions; (2) failed to prepare adequately for trial; and (3) failed to hire an investigator in a timely manner. Upon our thorough review of the record and the applicable law, we affirm the judgment of the post-conviction court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment
### of the Criminal Court Affirmed

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and CAMILLE R. MCMULLEN, JJ., joined.

Juni S. Ganguli, Memphis, Tennessee, for the appellant, Laderius Stephens.

Robert E. Cooper, Jr., Attorney General & Reporter; Jeffrey D. Zentner, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Katie Ratton, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## Factual and Procedural Background

A Sumner County grand jury indicted the Petitioner on three counts: especially aggravated robbery; attempted second degree murder; and possessing a firearm during the commission of a dangerous felony. On February 11, 2010, the Petitioner pleaded guilty to especially aggravated robbery and attempted second degree murder. The indicted count of possessing a firearm during the commission of a dangerous felony was nolle prossed. Pursuant to the Petitioner's plea agreement, the Petitioner was sentenced to concurrent sentences of fifteen years at 100% on the especially aggravated robbery count and eight years at 30% on the attempted second degree murder count, for a total effective sentence of fifteen years at 100%.

*Guilty Plea*

At the guilty plea hearing, the State recited the factual basis for the Petitioner's plea as follows:

> [O]n November the 3rd, 2008, around 3:00 A.M., [the Petitioner], along with Porter Mills . . . , backed up to the entrance of the Getwell Express located at 4106 Getwell. [The Petitioner] and a co[-]defendant, Sylvester Warren, placed bandanas on their faces and approached the clerk, Mr. Ali, shoving him inside the business at gunpoint.
>
> Both [the Petitioner] and Warren demanded money from the cash register and the safe of the business.
>
> [The Petitioner] struck Ali in the head with his handgun, took an amount of money from the register while Warren held him at gunpoint. They both threatened to kill the clerk, and Warren did shoot Mr. Ali one time in the arm.
>
> The police arrived on the scene while [the Petitioner and co-defendant] were fleeing the store; and both Warren and [the Petitioner] fired at the officer in an attempt to flee the scene.
>
> [The Petitioner] was later . . . found to be in possession of . . . Mr. Ali's wallet with his ID inside. Mr. Ali did give a typewritten statement – identified both [the Petitioner] and Mr. Warren in separate photographic lineups as the persons responsible for this incident.

The Petitioner testified at the guilty plea hearing that he graduated from high school. He confirmed that he understood the convictions for which he was pleading guilty and their respective sentences, as well as the fact that the sentences would run concurrently. He acknowledged that he understood that he was waiving his right to a trial by jury where he could present a defense and cross-examine the State's witnesses; his right to have an attorney represent him at trial; his right to testify or not testify at trial; and his right to an appeal and representation on appeal by an attorney. Finally, the Petitioner confirmed that he was satisfied with his attorney's representation of him and that no one was forcing him to plead guilty. The trial court accepted the Petitioner's guilty plea and entered the judgments against the Petitioner, sentencing the Petitioner to fifteen years' incarceration.

*Post-Conviction*

The Petitioner subsequently filed for post-conviction relief on December 22, 2010, alleging that he had received ineffective assistance of counsel in conjunction with his guilty plea and that his plea was constitutionally infirm. Specifically, the Petitioner argued that his appointed attorney ("Trial Counsel") was ineffective in failing to investigate the case in an adequate manner, in failing to move to suppress evidence of the victim's photographic identification of the Petitioner, and in failing to interview a potential witness.

At the post-conviction hearing, the Petitioner testified that, prior to the Petitioner entering his guilty plea, Trial Counsel visited him in custody on two or three occasions. The Petitioner informed Trial Counsel that the victim likely would be unable to identify the Petitioner. According to the Petitioner, however, Trial Counsel told the Petitioner that he simply needed "to sign for some time."

The Petitioner learned from Trial Counsel that the victim had identified the Petitioner in a photographic lineup. Although the Petitioner wanted Trial Counsel to suppress evidence regarding the victim's identification, he was unaware whether Trial Counsel did so prior to the Petitioner entering his guilty plea. Additionally, Trial Counsel informed the Petitioner that a co-defendant would testify against the Petitioner should the Petitioner decide to go to trial. The Petitioner acknowledged that a gunshot residue test was performed on him and that the test results were positive for the presence of gunpowder.

The Petitioner stated that he did not want to plead guilty but that "they just kept calling me in [to court]." On the occasion in which the Petitioner decided to plead guilty, the Petitioner's mother was present and crying, so "[t]hat's the reason why [he decided to plead guilty]." The Petitioner remembered saying at the time that he entered his plea that he was satisfied with Trial Counsel's representation, but he insisted that he was so upset that he was "[j]ust saying yes, sir and no, ma'am to [the court]."

The Petitioner contended that he was somewhere else during the course of the robbery. However, he did not provide the name of an alibi witness to Trial Counsel because "[h]e didn't ask."

The Petitioner acknowledged that he heard the State announce his effective sentence of fifteen years at 100% prior to the Petitioner entering his plea. He remembered the State providing an overview of the facts at the plea hearing. However, the Petitioner disagreed with the allegation that he was found with the victim's wallet. Nevertheless, the Petitioner admitted that he did not make his disagreement known at the plea hearing.

Trial Counsel testified at the post-conviction hearing that he requested the appointment of an investigator approximately four months after Trial Counsel's appointment on the case. He stated that he did not create a trial work-up but that he devoted at least five hundred hours to the case. Trial Counsel also did not move to suppress the photographic identification but agreed that if the case had gone to trial he could have requested a suppression hearing at some point throughout the course of the trial.

Trial Counsel received the discovery on the case from the public defender who was first assigned to the case, and he extensively reviewed that discovery with the Petitioner. He also reviewed with the Petitioner the potential risks of taking the case to trial, noting the case's "bad facts," such as the Petitioner being found in close proximity to the robbery location with the victim's identification card and wallet and the victim's identification of the Petitioner in a photographic lineup.

Trial Counsel stated that, on the day that the Petitioner pleaded guilty, Trial Counsel expected the Petitioner to reject the State's offer. However, during the process, the Petitioner changed his mind and decided to plead guilty. Trial Counsel stated that, had the case gone to trial, he would not have proffered evidence of an alibi because the Petitioner never informed him of a potential alibi witness. Rather, Trial Counsel's sole strategy would have been to hold the State to its proof. Trial Counsel noted that he would have asked for a continuance had the Petitioner maintained his desire to go to trial.

The post-conviction court took the matter under advisement and subsequently denied the Petitioner relief. In its written ruling, the post-conviction court found neither deficient performance nor prejudice resulting from Trial Counsel's representation. Regarding the Petitioner's claims of ineffective assistance of counsel and an involuntary plea, the court found that he "failed to meet his burden of proving his allegations of fact by clear and convincing evidence." The Petitioner now appeals, arguing that Trial Counsel was ineffective in failing to file a motion for discovery, failing to prepare adequately for trial, and failing to hire an investigator in a timely manner.

## Analysis

### *Standard of Review*

Relief pursuant to a post-conviction proceeding is available only where the petitioner demonstrates that his or her "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2006). To prevail on a post-conviction claim of a constitutional violation, the petitioner must prove his or her allegations of fact by "clear and convincing evidence." Tenn. Code Ann. § 40-30-110(f) (2006). See Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999). This Court will not overturn a post-conviction court's findings of fact unless the preponderance of the evidence is otherwise. Pylant v. State, 263 S.W.3d 854, 867 (Tenn. 2008); Sexton v. State, 151 S.W.3d 525, 531 (Tenn. Crim. App. 2004). We will defer to the post-conviction court's findings with respect to the witnesses' credibility, the weight and value of their testimony, and the resolution of factual issues presented by the evidence. Momon, 18 S.W.3d at 156. With respect to issues raising mixed questions of law and fact, however, including claims of ineffective assistance of counsel, our review is de novo with no presumption of correctness. See Pylant, 263 S.W.3d at 867-68; Sexton, 151 S.W.3d at 531.

### *Ineffective Assistance of Counsel*

The Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee a criminal defendant the right to representation by counsel at trial.[1] Both the United States Supreme Court and the Tennessee Supreme Court have recognized that this right is to "reasonably effective" assistance, which is assistance that falls "within the range of competence demanded of attorneys in criminal cases." Strickland v. Washington, 466 U.S. 668, 687 (1984); see also Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). The deprivation of effective assistance of counsel at trial presents a claim cognizable under Tennessee's Post-Conviction Procedure Act. See Tenn. Code Ann. § 40-30-103; Pylant, 263 S.W.3d at 868.

In order to prevail on a claim of ineffective assistance of counsel, the petitioner must establish two prongs: (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. See Strickland, 466 U.S. at 687; Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). The petitioner's failure to establish either prong is fatal to

---

[1] The Sixth Amendment right to counsel is applicable to the States through the Fourteenth Amendment to the United States Constitution. See Gideon v. Wainwright, 372 U.S. 335, 342 (1963); State v. Howell, 868 S.W.2d 238, 251 (Tenn. 1993).

his or her claim of ineffective assistance of counsel. Goad, 938 S.W.2d at 370. Accordingly, if we determine that either prong is not satisfied, we need not consider the other prong. Id.

To establish the first prong of deficient performance, the petitioner must demonstrate that his lawyer's "acts or omissions were so serious as to fall below an objective standard of 'reasonableness under prevailing professional norms.'" Vaughn v. State, 202 S.W.3d 106, 116 (Tenn. 2006) (quoting Strickland, 466 U.S. at 688)). Our supreme court has explained that:

> [T]he assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence. Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations.

Baxter, 523 S.W.2d at 934-35 (quoting Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974)). When a court reviews a lawyer's performance, it "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." Howell v. State, 185 S.W.3d 319, 326 (Tenn. 2006) (citing Strickland, 466 U.S. at 689). Additionally, a reviewing court "must be highly deferential and 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" State v. Honeycutt, 54 S.W.3d 762, 767 (Tenn. 2001) (quoting Strickland, 466 U.S. at 689). We will not deem counsel to have been ineffective merely because a different strategy or procedure might have produced a more favorable result. Rhoden v. State, 816 S.W.2d 56, 60 (Tenn. Crim. App. 1991). We recognize, however, that "deference to tactical choices only applies if the choices are informed ones based upon adequate preparation." Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992) (citing Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982)).

As to the prejudice prong, the petitioner must establish a "reasonable probability that but for counsel's errors the result of the proceeding would have been different." Vaughn, 202 S.W.3d at 116 (citing Strickland, 466 U.S. at 694). In the context of a guilty plea, our analysis of this prong

> focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the [petitioner] must show that there is a reasonable

probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

Hill v. Lockhart, 474 U.S. 52, 59 (1985). See also Calvert v. State, 342 S.W.3d 477, 486 (Tenn. 2011).

## Filing Discovery Motions

The Petitioner asserts that Trial Counsel was ineffective in failing to file the proper motions for discovery. As a result, the Petitioner avers that "it is unclear whether [Trial C]ounsel had access to all relevant materials." Further, although the Petitioner acknowledges that Trial Counsel received the case file from the public defender first assigned to the case, the Petitioner contends that "it is unclear whether the [public defender] had filed discovery motions." The State responds that the Petitioner has failed to show deficient performance or prejudice by clear and convincing factual evidence.

Turning first to the prejudice prong, the Petitioner has failed to show by clear and convincing evidence that, even if deficient, Trial Counsel's actions prejudiced the Petitioner in any way. The Petitioner has failed to provide any evidence that Trial Counsel could have but failed to discover. Consequently, it is impossible to prove that the Petitioner, as a result of such undiscovered evidence, would not have pleaded guilty and instead would have gone to trial. See Hill, 474 U.S. at 59. Thus, the Petitioner may enjoy no relief on this issue.

## Preparation for Trial

The Petitioner contends that Trial Counsel failed to prepare adequately for trial. As support, the Petitioner relies on Trial Counsel's admission that he had not yet completed a "trial work-up," noting that the trial was on schedule for less than a week from the time that the Petitioner entered into his plea agreement.

Trial Counsel testified at the post-conviction hearing that he had not yet completed a trial work-up at the time of the plea hearing. However, he stated that he had devoted at least five hundred hours to the case. Additionally, Trial Counsel testified that he would have requested a continuance on the day of the Petitioner's guilty plea had the Petitioner decided to go to trial. Moreover, Trial Counsel stated that, had the Petitioner's case gone to trial, Trial Counsel's sole strategy would have been to hold the State to its proof. He would not have proffered proof of an alibi because the Petitioner never informed Trial Counsel of a potential alibi witness.

The Petitioner has failed to establish by clear and convincing evidence that Trial Counsel was deficient in his representation or that such representation prejudiced the

Petitioner. Although Trial Counsel had not yet completed a trial work-up, Trial Counsel knew what his strategy would be for the trial, which was to hold the State to its proof. The Petitioner has failed to prove that Trial Counsel's representation was deficient in this regard.

Moreover, even if Trial Counsel somehow was deficient in not preparing a trial work-up, the Petitioner pleaded guilty days prior to the beginning of trial. Thus, the Petitioner has failed to show how Trial Counsel's behavior prejudiced him. Accordingly, he is entitled to no relief on this issue.

Timely Hiring an Investigator

Lastly, the Petitioner asserts that Trial Counsel failed to hire an investigator in a timely manner. He points to Trial Counsel's testimony that he waited several months after his assignment to the case before hiring an investigator.

We hold that the evidence does not preponderate against the post-conviction court's findings. The Petitioner has failed to establish that Trial Counsel was deficient in waiting four months to hire an investigator. Moreover, the Petitioner has failed to establish any prejudice he suffered as a result of Trial Counsel's actions. Accordingly, the Petitioner is not entitled to post-conviction relief on the grounds of ineffective assistance of counsel.

*Validity of Guilty Plea*

The Petitioner also asserts that his pleas were entered involuntarily. In his appellate brief, he claims that "he did not want to accept the plea agreement." Rather, only "after having been brought to the courtroom day after day and watching his mother cry, he entered the plea." We agree with the post-conviction court that the Petitioner has failed to establish by clear and convincing evidence that his plea was involuntary.

To be valid, a guilty plea must be entered knowingly, voluntarily, and intelligently. See Boykin v. Alabama, 395 U.S. 238, 242-44 (1969); State v. Mackey, 553 S.W.2d 337, 340 (Tenn. 1977) superseded on other grounds by Tenn. R. of Crim. P. 37(b) and Tenn. R. of App. P. 3(b). A plea meets constitutional muster when the defendant understands both what the plea connotes and its consequences, Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (citing Boykin, 395 U.S. at 244), and makes a voluntary and intelligent choice from the alternative courses of action available to plead guilty. Jaco v. State, 120 S.W.3d 828, 831 (Tenn. 2003) (citing North Carolina v. Alford, 400 U.S. 25, 31 (1970)). In Mackey, 553 S.W.2d at 341, our supreme court set forth the procedure that a trial court should follow when accepting a guilty plea in order to ensure that a defendant's plea is knowing, voluntary, and intelligent. See also Tenn. R. Crim. P. 11(b). A trial court must "substantially" comply with this procedure. State v. Newsome, 778 S.W.2d 34, 38 (Tenn. 1989).

We have reviewed the transcript of the guilty plea hearing and conclude that the plea was constitutionally sound.  At the guilty plea hearing, the Petitioner acknowledged that he understood: the nature of the charges for which he was pleading guilty and potential sentencing ranges; his right to a jury trial, wherein he could cross-examine the State's witnesses and he could but would not be forced to testify; and his right to an appeal and to be represented by counsel on appeal.  Thus, the Petitioner has failed to establish that he did not knowingly, intelligently, and voluntarily enter into his plea agreement.  Accordingly, the Petitioner is not entitled to post-conviction relief on this basis.

## CONCLUSION

For the foregoing reasons, the Petitioner has failed to establish that he is entitled to post-conviction relief.  Therefore, we affirm the judgment of the post-conviction court denying relief.

_____
JEFFREY S. BIVINS, JUDGE